Filed 4/19/23  In re N.N. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re N.N. et al., Persons Coming Under the Juvenile Court Law. | B318483<br>(Los Angeles County Super. Ct.<br>No. 21CCJP03993A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>B.V.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Martha A. Matthews, Judge.  Affirmed.

Janette F. Cochran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, William D. Thetford and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

B.V. (mother) appeals from the jurisdictional order that resulted in the detention of N.N. (born March 2013), L.N. (born March 2015), and J.R. (born April 2017).[1] Mother argues the evidence did not support the finding that the children were at substantial risk of physical harm from domestic violence or mother's substance abuse, but mother does not address the other basis for jurisdiction. We find substantial evidence supports the juvenile court's order.

## FACTUAL BACKGROUND
**Prior referrals to DCFS in 2016 and 2019**

On April 18, 2016, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging emotional abuse and general neglect of N.N. and L.N. by mother and their father, J.E. It was claimed that on April 15, 2016, mother went to J.E.'s home to pick up the children when a fight ensued and resulted in J.E. grabbing a knife and chasing mother out of the house. J.E. was arrested by law enforcement. The children were present and left alone in the home for an unknown amount of time while J.E. and mother were outside.

---

[1]    N.N. and L.N.'s father is J.E. J.R.'s father is M.R. Neither father is a part of this appeal.

2

Mother and J.E. stated their relationship had ended in September 2015 after it became violent and J.E. had harmed mother.

The claim of general neglect was substantiated for J.E., but not against mother. The claim of emotional abuse was inconclusive.

On March 13, 2019, DCFS received a new referral that alleged mother had caused emotional abuse to N.N., L.N., and J.R. The conduct, however, involved J.R.'s father, M.R. It was claimed that mother came to M.R.'s apartment and vandalized his cars. Law enforcement arrived, and while investigating, they overheard mother admitting she had vandalized the cars and wanted to hit M.R. with a car.

M.R. also reported a prior incident (March 11, 2019) of domestic violence involving mother. This occurred when M.R., mother and the children went to dinner to celebrate N.N.'s birthday. When M.R. advised mother he needed to leave because it was late, mother became angry and started hitting M.R. in the face. M.R. showed law enforcement his injuries.

Mother was arrested for felony vandalism and domestic violence. N.N. and L.N. went to live with the maternal grandmother and J.R. lived with M.R.

During the investigation, M.R. obtained a temporary restraining order protecting him and J.R. from mother.

J.R. remained in M.R.'s care. Though mother had sole legal custody of N.N. and L.N. through a family law order, mother left them in the care of the maternal grandmother and maternal aunt. DCFS found insufficient evidence to substantiate the claim of emotional abuse and closed the case as inconclusive.

In 2020, there was a claim against J.E. for emotional abuse and general neglect based on him attacking another driver while the children were in his car. This incident did not involve mother. Afterward, mother was granted full custody of the children, and she obtained a three-year restraining order protecting her and the children from J.E.

**Criminal investigation of mother and fathers**

Mother's criminal history included infliction of corporal injury to a spouse or cohabitant and making a criminal threat. J.E.'s criminal history included criminal threats, possession of a deadly weapon, a warrant for failure to appear, kidnapping, sex with a minor, disorderly conduct, intoxication, infliction of corporal injury on a spouse, receipt of stolen property, child cruelty, violation of an order preventing domestic violence, assault with a deadly weapon, driving with a suspended license, battery, and reckless driving. The other father, M.R., had a history of battery on a peace officer and emergency personnel, disorderly conduct, intoxication, several acts of driving under the influence, driving with a suspended license, giving false information to a peace officer, and a hit and run while driving under the influence of alcohol.

**Current referral**

On July 26, 2021, mother called police because M.R. had struck mother with a metal marijuana grinder while J.R. was present.

DCFS received a child abuse referral on the same date, alleging that N.N. and L.N. were victims of emotional distress by the father, M.R., and that J.R. had been present when M.R. attacked mother.

4

On August 19, 2021, the juvenile court ordered the children removed and placed with the maternal aunt.

On August 25, 2021, a petition was filed alleging the children, N.N., L.N., and J.R., were within the court's jurisdiction based on Welfare and Institutions Code section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), and (j) (abuse of sibling).[2]

The petition alleged a history of domestic violence between mother and M.R. that endangered the children's physical health and safety. This included the July 26, 2021 incident when M.R. struck mother with a metal marijuana grinder and nine prior occasions when mother attacked M.R. or his mother (paternal grandmother): (1) mother struck M.R. on March 20, 2021 with a metal tool and broke three of his ribs, (2) mother threw a full water bottle at M.R. on May 20, 2020, (3) mother struck M.R.'s leg while it was in a cast in 2020, (4) mother attacked the paternal grandmother when she intervened, (5) mother vandalized M.R.'s vehicles with a knife on March 12, 2019, (6) mother threatened to hit M.R. with a motor vehicle on March 12, 2019, (7) mother grabbed M.R.'s hair and scratched his face on March 9, 2019, while the children were in the vehicle, (8) mother repeatedly struck and scratched M.R. in January 2019, (9) mother grabbed a knife with a serrated edge and lacerated M.R. in September or October 2018, and (10) mother struck M.R. with a vehicle on February 12, 2018.

---

[2] All further unattributed statutory references are to the Welfare and Institutions Code.

In addition, the petition alleged that M.R. had physically abused L.N. by striking him with a clothes hanger. It added that mother had failed to protect L.N. from M.R.

The petition alleged a failure to protect the children from experiencing the violence in the household between mother and M.R. under section 300, subdivision (b).It also alleged that mother was incapable of ensuring the young children were properly supervised due to her history of and current substance abuse of both marijuana and alcohol. It alleged that M.R. also abused alcohol while the children were in his care. Mother was alleged not to have protected the children from the consequences of this substance abuse.

The petition also included allegations that mother knew that father, J.E., had violent tendencies, such as his attack on another motorist with a hammer, and she had failed to protect the children from his violent outbursts.

The petition alleged under section 300, subdivision (j) that M.R. had physically abused L.N. by striking him with a hanger, and there was a danger of abuse to the other siblings.

DCFS submitted a detention report and addendum report on August 25, 2021,[3] that included a summary of the July incident when M.R. struck mother with the marijuana grinder. DCFS recommended that the children be detained because mother had a history of substance abuse, that she currently abused marijuana and alcohol, M.R. had a history of substance abuse, and J.E. had violent behavior. The detention report

---

[3]     The detention report and an addendum were omitted from the clerk's transcript. On October 14, 2022, counsel for mother noted the omission and requested the reports be added to the record under California Rules of Court, rule 8.407.

6

included the fact that when the investigator was meeting with the mother at her home on July 30, 2021, M.R. tried to enter and speak with the investigator, at which time mother began yelling at M.R. and demanding he leave.

Mother admitted to the investigator she had been arrested after vandalizing M.R.'s vehicle, that M.R. continued to visit the children, and that there were four incidents of domestic violence involving M.R. The children all told the investigator that M.R. does not live with them, but visits and fights with mother. L.N. stated that M.R. had hit him with a hanger and that "he hits us when he drinks Papa juice." J.R. said M.R. drinks a lot, beats on the door all the time, and had hit him one time.

M.R. told the investigator that the incident was an accident and that he had taken mother's marijuana grinder to upset her after she returned late from work. He added that he had a complicated history with mother, and he had obtained custody of J.R. after mother had vandalized his car and been arrested. He also stated that a few months earlier, mother had beat him up and broken three of his ribs. M.R. stated he had been living with mother consistently for the past year and that he cares for the children when mother is at work at night. He also reported mother smoked marijuana daily and drank alcohol every morning before falling asleep for the day. Father denied that "papa juice" was alcohol and asserted it was "shakes" he made for himself and the children.

The paternal grandmother told the investigator that she was taking care of J.R. and that she wanted to care for him so he could be safe. The paternal grandmother asked that her residence be kept confidential because mother had threatened to kill her and sent people to vandalize her property. The paternal

grandmother also stated that mother had shown up at M.R.'s work and tried to run him over and then broke three of his ribs when she hit him with a metal tool.

The investigator confirmed that mother was on probation for the vandalism that occurred in 2019.

**Detention hearing**

A detention hearing was held on August 30, 2021. The court found that J.E. was the presumed father of N.N. and L.N. At a subsequent hearing on October 4, 2021, the court found M.R. to be the presumed father of J.R. In addition, at the August 30, 2021 hearing, the court found a prima facie case to remove the children pending disposition or further order.

N.N. told the investigator that he lived with his mother, M.R., and siblings. He denied any physical abuse but shared that M.R. had accidentally thrown a hanger at him. He added that M.R. drank and his mother smoked. He said the police had been to the home a few times because his mother reported their "dad." He mentioned having heard his parents fighting and some screaming on many occasions, but he had not seen them fighting because he was in his room.

L.N. said he lived with his mother, brothers, and M.R. He admitted that M.R. had disciplined him with a hanger, which had left marks. He added that he had also been hit with a belt and that his mother had hit him with a hanger once. He stated that M.R. drank "papa juice" and that his mother smoked with the children present. He also stated that the police had come to the home many times because his mother needed their help with M.R. He added that he had seen his mother and M.R. fight with their hands and with their words.

On September 15, 2021, a DCFS investigator talked with mother, who admitted to a history of violence with M.R. and to calling the police on several occasions because he would come to the home drunk or on drugs. She said M.R. had thrown the marijuana grinder at her but denied that she had thrown a water bottle at him, hit him when he was in a cast, attacked his mother, or hit him with a car. She admitted having said she wanted to run him over and had scratched his car.

Mother denied any physical abuse had occurred to her children or that she abused any substances. She stated she had not failed to protect the children and that her use of marijuana had not caused any harm to the children. Mother added that she did not want to reconcile with either father, and she does not use marijuana when the children are present.

DCFS was unable to contact the fathers.

DCFS spoke with the maternal aunt, who was a caregiver for the children and had provided care for the children when mother was incarcerated. She said she was not in contact with either father and that the family had little contact with J.E.

DCFS filed a last minute information report for the court on October 18, 2021, that advised the court that M.R. had come to the maternal aunt's home on September 27, 2021, in the middle of the night. M.R. had broken windows and dented the doors when trying to use something to enter the home. The caregiver reported that M.R. also appeared at her home on October 4, 2021, and had spit on her when she asked him to leave. The report also advised the court that mother confirmed she had allowed M.R. into the house to help her with the children because she needed the help. She also had received an eviction notice and was trying to find housing.

DCFS filed an interim review report on December 3, 2021, that indicated J.E. had not completed an interview about the petition, would not engage with the social workers, and would just rant about the children's placement. The report also showed mother was receiving substance abuse treatment, but would be discharged if she did not stop testing positive for marijuana. Mother had tested positive on eight occasions between September 20 and November 22, 2021. DCFS argued that the minors would be in danger if released to the care of any parent because of the history of substance abuse and domestic violence.

DCFS filed a last minute information report to confirm that mother remained enrolled in her programs but continued to test positive for drugs on December 6, 2021. However, she did test negative for drugs on December 15 and 22, 2021.

**Jurisdiction hearing**

The jurisdiction hearing was held on January 12, 2022. The juvenile court admitted into evidence the DCFS reports that contained the facts its investigators had compiled during their interviews with mother, the children, the fathers, and relatives. Mother testified that she had been married to M.R., they had J.R., and she had taken care of her two other children, N.N. and L.N. with M.R. She testified that she had not lived with M.R. since February 2018.

Mother added that after she had moved out, she had lived with her mother until she went to jail for two months. She was put on probation for five years and ordered to complete a domestic violence program. Mother testified that she completed the program.

When asked whether there was domestic violence in her relationship with M.R., she testified that she had been a victim in

10

her relationship with J.E. and then a batterer in her relationship with M.R. because "Habits just followed. I just did what I knew." She said she had been taking domestic violence classes and that therapy had been very helpful.

Mother admitted that the domestic violence had a negative effect on both her and her children. She testified that she had learned the environment was unhealthy and could be teaching that the behavior was normal. Mother said she noticed she had a control issue and had decided not to be in a relationship so she could focus on herself and her children. She identified her past behavior as mistaken and recognized that her attitude and actions affected the children.

Mother also testified that she was in a substance abuse program because she was smoking marijuana and had prior problems with alcohol and drugs. She said that she had not drunk alcohol since July the prior year and had not smoked marijuana since August or September 2021. She testified that she would smoke on weekends while her children were with her sister or their grandmother. She asserted she was never intoxicated when she was caring for her children.

Mother also said she had learned parenting skills and that she wanted to become a parent who would play with her children, as opposed to watching them play with the crafts and toys she had bought for them. She testified that providing a safe home for her children was her "priority number one."

Mother said she had never seen M.R. strike any of her children and she never used physical discipline on her children. She had not seen M.R. care for the children while intoxicated, and she would not allow anyone who was intoxicated to watch over the children. She left M.R. because he had a drinking

problem. After she left, she chose not to coparent with M.R. for almost a year and had only recently started coparenting with him.

Mother ended her direct testimony by saying she was committed to continuing in the programs and that she would do anything and everything for the children. She added that if the children were returned to her, she would be moving into a place that her grandmother had rented for them.

On cross-examination, mother testified that she was not aware that M.R. had claimed to be living at her home with her since 2020. She stated she had not seen him since August 2021, when she called the police because he was angry with her. When asked about coparenting with M.R., she testified that some days were good and free of problems, but others were not because he seemed to be intoxicated. She added that M.R. would take the children and, since she knew M.R. had a drinking problem, she would always make sure he appeared sober. Mother testified that her efforts to ensure M.R. was sober created trouble because he did not think it fair for her to decide when he could take the children.

Mother denied that M.R. was coming over to her home. She testified that he was there just for the exchange of the children.

On redirect, mother testified that she did not share a residence with M.R. in 2019 or 2020. She said there was no contact in 2019 and that the interactions in 2020 and 2021 were coparenting.

Mother admitted to having been in jail for vandalizing M.R.'s vehicle in 2019, but she denied the claims that she had thrown a water bottle at him or struck him with a metal tool. Mother agreed there was a problem with domestic violence when

she was with M.R., but that had been addressed after she left him.

The juvenile court dismissed the counts based on section 300, subdivision (a), because it found that DCFS had not established that the children would suffer a substantial risk of serious physical harm inflicted nonaccidentally on them by the parents.

The court sustained the count based on section 300, subdivision (b), because it found DCFS had established there was a substantial risk that the children would suffer serious physical harm based on the history of violent altercations between mother and M.R., mother's awareness of his drinking problems, and the children's statements that they had seen M.R. drinking. The court also found that the evidence in the interviews with the children in the DCFS reports established that mother knew or should have known that M.R. had been drunk around the children and had hit them. The court noted that the investigations showed that one of the children had told mother about M.R. hitting him.

The court also sustained the count based on section 300, subdivision (j), because it found that one of the children had been abused or neglected and there was a substantial risk that a sibling would be.

The other father, J.E., had pleaded no contest to the claims in the petition about his conduct. The court found that DCFS had not proven that mother had failed to protect the children from J.E.'s violent conduct.

The three minors were declared dependents of the court, and the court ordered them placed in suitable placement under the supervision of DCFS.

The juvenile court recognized mother's progress but found more time was needed to ensure that the children were safe due to the history of substance abuse and domestic violence. It found that a three-month progress review was appropriate.

Mother filed a timely notice of appeal on February 9, 2022. Six months later, on August 29, 2022, the juvenile court ordered the children returned to mother. The court found that the mother had made substantial progress toward alleviating or mitigating the causes and that the return of the children would not create a substantial risk to the safety, protection, or well-being of the children.

## DISCUSSION

Mother appeals from the January 12, 2022 order resulting in the detention of N.N., L.N., and J.R. Although the children have been returned to mother, in view of the length of time since the initial referral of this family to DCFS (2016), the nature of the referrals and the young ages of the children, we cannot assume there will be no further need for intervention by the dependency system, which may be informed by this appeal. We therefore find the case is not moot as the jurisdictional finding could affect future proceedings. (*In re D.P.* (2023) 14 Cal.5th 266, 285-287.)

## I.    Mother failed to address each basis for the juvenile court's jurisdiction

Mother argues a lack of substantial evidence of her conduct to establish grounds for jurisdiction under section 300, subdivision (b). We note the juvenile court found the children were dependents based on the conduct of the three parents: mother and the two fathers, J.E., and M.R.

"It is commonly said that the juvenile court takes jurisdiction over children, not parents." (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1491, overruled in part by *In re D.P., supra*, 14 Cal.5th 266.) "The law's primary concern is the protection of children. [Citations.] The court asserts jurisdiction with respect to a child when one of the statutory prerequisites listed in section 300 has been demonstrated." (*Ibid.*)

"As a result of this focus on the child, it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.] Once the child is found to be endangered in the manner described by one of the subdivisions of section 300—e.g., a risk of serious physical harm (subds. (a) & (b)), serious emotional damage (subd. (c)), sexual or other abuse (subds. (d) & (e)), or abandonment (subd. (g)), among others—the child comes within the court's jurisdiction, even if the child was not in the physical custody of one or both parents at the time the jurisdictional events occurred. [Citation.] For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] As a result, it is commonly said that a jurisdictional finding involving one parent is '"good against both. More accurately, the minor is a dependent if the actions of either parent bring [him] within one of the statutory definitions of a dependent."'" (*In re I.A., supra*, 201 Cal.App.4th at pp. 1491-1492.)

An appellate court, therefore, may decline to address the evidentiary support for one jurisdictional finding if another single

finding has support. (*In re I.A., supra*, 201 Cal.App.4th at p. 1492.) For example, in *In re I.A.*, the father challenged only the evidentiary support for the jurisdictional findings based on his conduct. He did not challenge juvenile court's findings that it had jurisdiction over the children based on the evidence of the mother's drug abuse. The court found the father's appeal could not obtain any relief because, even if the findings concerning his conduct lacked evidentiary support, it could not reverse the juvenile court's jurisdictional and dispositional orders.

Mother's appeal is similarly defective because mother did not address the findings regarding J.E. or M.R. J.E. pleaded no contest to the claim that he had been unable to provide regular care of the children due to his mental illness, developmental disability, or substance abuse. The January 12, 2022 minute order shows that counts B3, B5, and J1 were sustained as pleaded and counts B1, B2, and B4 were sustained as amended based on the no contest plea entered by J.E. This included the claim that J.E. had struck a woman with a hammer while in the presence of the children. The court found that the portions of the counts that referred to J.E. were true as alleged or amended.

The court also sustained counts as to M.R. that alleged M.R. had failed or was unable to supervise or protect the children due to his substance abuse.

Mother's appeal does not challenge these findings. Since the children are dependents of the court if the actions of any parent bring them within one of the statutory definitions of a dependent jurisdictional finding, the findings for J.E. and M.R. are sufficient to make the children dependents. Mother's appeal cannot obtain relief because, even if the findings against her lack evidentiary support, the jurisdictional findings will not be

reversed. The juvenile court will retain jurisdiction over the children because of the findings concerning J.E. and M.R.

In addition, the court found that DCFS had established its counts under section 300, subdivisions (b) and (j), for all three children. "'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Mother's opening brief addresses only the findings in support of subdivision (b). She does not identify any basis to find that the juvenile court did not have substantial evidence to support its finding in support of subdivision (j). Since only one subdivision of section 300 is needed to find the children dependents of the court, mother has not shown grounds to reverse the jurisdictional order of January 12, 2022.

## II. Substantial evidence supports the finding of jurisdiction

### A. *Applicable law and standard of review*

A child may be adjudged a dependent of the court under section 300, subdivision (b)(1), if the "child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . [¶] [t]he failure or inability of the child's parent . . . to adequately supervise or protect the child."

17

The "'three elements'" for jurisdiction under section 300, subdivision (b) are "'(1) *neglectful conduct by the parent in one of the specified forms*; (2) causation; and (3) "serious physical harm or illness" to the minor, or a "substantial risk" of such harm or illness.'" (*In re R.T.* (2017) 3 Cal.5th 622, 628.) "'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.'" (*In re I.J., supra*, 56 Cal.4th at p. 773.)

In reviewing the jurisdictional findings and the disposition, we look to see if substantial evidence, contradicted or uncontradicted, supports them. (*In re Tania S.* (1992) 5 Cal.App.4th 728, 733.) Under this standard, we must view the evidence in the light most favorable to the juvenile court's order, drawing every reasonable inference in support of the judgment. (*In re Marina S.* (2005) 132 Cal.App.4th 158, 165.) We do not reweigh evidence. (*Ibid.*)

**B.** ***Evidence of mother's substance abuse and the history of domestic violence established jurisdiction***

Mother argued there was no evidence that her marijuana use caused any harm to the children. She testified she had not used alcohol since July 2021, she had last smoked marijuana in August or September 2021, and she had enrolled in an outpatient program for substance abuse education.

The jurisdictional hearing, however, occurred only months later, in January 2022. The evidence showed that mother had tested positive for marijuana as recently as November 22 and December 6, 2021. Mother testified that until she stopped in August or September of 2021, she had used marijuana weekly and only when the children were with her sister or a

18

grandmother. The DCFS report, however, contained statements from the children that they had seen her smoking. In addition, M.R. had reported that mother smoked marijuana every day and drank alcohol every morning before she slept for the rest of the day while working nights. Mother's frequent marijuana use, with the children present, coupled with her day sleeping after smoking and drinking in the morning is substantial evidence that her substance abuse could result in lack of adequate supervision and care. This evidence identifies potential neglectful conduct that could cause a substantial risk of harm if the children are not properly supervised. The juvenile court also noted that it was early in mother's recovery from a lengthy and frequent habit of using marijuana and that a risk of future harm existed because relapses are common.

Mother also argued that the evidence of domestic violence was insufficient because she was no longer in a relationship with M.R., and she had completed domestic violence courses. The juvenile court, however, based its findings on a history of domestic violence between mother and M.R. This included mother as the aggressor when she vandalized M.R.'s vehicles, and with M.R. as the aggressor, such as when he broke windows and battered the door at maternal aunt's home in his effort to enter the place where the children were staying. This conduct created a substantial risk of harm to the children.

Although the evidence showed mother did not want a relationship with M.R., it also showed he continued to want to visit the children and was not taking advantage of services needed to improve his substance abuse problem. The juvenile court acknowledged mother's efforts but found that the children had been exposed to years of violence with M.R. and a risk of

future harm remained. This conduct could cause substantial harm to the children if they are present.

The juvenile court, therefore, had substantial evidence to support its finding that it had jurisdiction over the children because there were circumstances that subjected the children to a risk of harm.

## DISPOSITION

The juvenile court's jurisdictional order is affirmed.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.

20